390 A.2d 820

**COMMONWEALTH of Pennsylvania**

v.

**Herman Nathanuel DUNCAN, Appellant.**

Superior Court of Pennsylvania.

Submitted March 16, 1977.

Decided July 12, 1978.

278

Frederic G. Antoun, Jr., Assistant Public Defender, Harrisburg, for appellant.

Peter J. Anderson, Deputy District Attorney, and LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The six Judges who decided this case being equally divided, the judgment of sentence is affirmed.

PRICE, J., files an opinion in support of affirmance in which CERCONE and VAN der VOORT, JJ., join.

SPAETH, J., files an opinion in support of reversal in which JACOBS, President Judge and HOFFMAN, J., join.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

OPINION IN SUPPORT OF AFFIRMANCE.

PRICE, Judge:

After a jury trial, appellant was convicted of possession with intent to manufacture or deliver controlled substances,[1] namely heroin and cocaine. Post-trial motions were denied, and appellant was sentenced to not less than five nor more than ten years confinement at a state correctional institu-

1. 35 P.S. § 780–113(a)(30).

tion. For the reasons stated herein, we would affirm the lower court's judgment.

The facts necessary for resolution of this appeal are the following. At trial, two state police officers testified that on March 17, 1976, approximately eight state troopers appeared at 344 Woodbine Street, Harrisburg, a three story residence, to execute a search warrant. Trooper James Drenning knocked on the front door. Drenning testified that a woman "came to the front door and asked who was there and I replied, Jimmy. And she said, Jimmy who, and she opened the door. I said, state police, search warrant, proceeded past her to the rear portion of the home." (N.T. 19). Drenning testified that to his knowledge all of the troopers had their weapons drawn when the door was opened. At the conclusion of this testimony, defense counsel requested an opportunity to investigate further the execution of the search warrant and the possibility of suppressing seventy-six bags of heroin which the troopers testified appellant dropped to the floor during the search. The court denied the request as untimely because no pre-trial suppression motion had been filed.

█ Appellant raises several arguments on appeal. First, appellant contends that he had a right to move for suppression during trial, asserting that defense counsel could not reasonably have been expected to discover the impropriety prior to trial. The lower court echoed our oft repeated response to such an assertion. Pa.R.Crim.P. 323 provides the precise mechanism for suppression of evidence allegedly obtained in violation of a defendant's constitutional rights.

"[I]t is clear that if a defendant fails to raise suppression issues prior to trial, he may not litigate them for the first time at trial, in post-trial motions, or on appeal." *Commonwealth v. Throckmorton*, 241 Pa.Super. 62, 66, 359 A.2d 444, 446 (1976) (citations omitted).

Appellant's attempt to come within that portion of Pa.R. Crim.P. 323(b) which excuses one for failure to file for suppression at least ten days prior to trial where "the opportunity did not previously exist, or the interests of

justice otherwise require" is patently without merit. Appellant argues that he was not personally named in the warrant and was not the individual who received the troopers at the door. Therefore, it is asserted, since appellant was not the direct object of the search, one could not expect his counsel to investigate the warrant's execution.

This is not a case where there was no opportunity to learn the facts which might possibly have formed the basis of a suppression request. Instead, it is a simple case of counsel's failure to act, for whatever reason. The very nature of the case, charging possession, should have alerted counsel to inquire into the seizure of physical evidence. Appellant testified that he was a good friend of the woman who opened the door to the troopers and who could have related exactly what occurred at the door. From the record and from appellant's argument on appeal, we find nothing indicating that appellant lacked the opportunity to learn of the warrant's execution prior to trial. Simple failure to apprise oneself of facts necessary for a pre-trial suppression motion does not entitle one to relief from the Rule's mandate. Therefore, we would hold, as did the court below, that the suppression issue is waived.

We turn now to appellant's second contention, that he was handicapped by ineffective assistance of counsel. This contention is based upon appellant's assertion that there was no compliance with the "knock and announce" rule and that the police resorted to "trick, ruse or subterfuge" in gaining entry to the searched premises. Appellant bases his ineffectiveness claim on trial counsel's failure to investigate and to file a timely motion for suppression of the seized narcotics. Hidden in appellant's briefing of this issue is an additional assertion that "[i]t is . . . questionable whether, as to Appellant, the warrant was based on probable cause and whether the police had a right to search Appellant once inside the house." (Appellant's brief at 22). Because no pre-trial suppression motion was filed, the underlying claims on inadmissibility of the seized evidence have been waived. *Commonwealth v. Gaston*, 474 Pa. 218, 378 A.2d

297 (1977); *Commonwealth v. Johnson,* 467 Pa. 146, 354 A.2d 886 (1976). Appellant's claims will be considered only in the context of resolving the ineffectiveness claim. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

The standard for determining counsel's alleged ineffectiveness was set forth by the supreme court in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967):

> "[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis."
> *Id.,* 427 Pa. at 604–05, 235 A.2d at 352–53 (emphasis in original) (footnote omitted).

Before attempting to determine the basis for counsel's failure to file a suppression motion, we must decide whether the claim counsel failed to pursue was a frivolous one. *See Commonwealth v. Humphrey,* 473 Pa. 533, 375 A.2d 717 (1977); *Commonwealth v. Hubbard, supra.* Assuming that appellant's statement of the facts is accurate, we find that a suppression motion based upon alleged illegality in execution of the warrant or lack of specificity in the warrant itself would have been a futile gesture.

Appellant relies upon Pa.R.Crim.P. 2007 in asserting improper execution of the search warrant. Pa.R.Crim.P. 2007 provides:

> "(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search."

■ *Commonwealth v. Newman,* 429 Pa. 441, 240 A.2d 795 (1968), and a line of subsequent cases have held that announcement of authority and purpose is required before officers may make a forcible entry to conduct a search. *See also Commonwealth v. Samuels,* 235 Pa.Super. 192, 340 A.2d 880 (1975); *Commonwealth v. Clemson,* 234 Pa.Super. 191, 338 A.2d 649 (1975). Our initial inquiry is whether there was a forcible entry in this case. After the officer knocked at the door, it was opened by an occupant of the residence. The police entered the house only after the door had been opened to them. Appellant argues that the fact that weapons were drawn constituted a forcible entry by the police. The United States Supreme Court defined forcible entry or breaking in *Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), as any unannounced entry, regardless of the actual force used. On that basis, it was decided in *Commonwealth v. Clemson, supra,* that police use of a passkey to gain entrance was equivalent to a forcible entry.

■ It is well recognized that "[w]hen a police officer displays a warrant and claims authority thereunder to search premises, he effectively declares his legal right to search and announces that the accused has no right to resist that authority. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)." *Commonwealth v. Pichel,* 229 Pa.Super. 103, 106, 323 A.2d 113, 114 (1974). Because the display of weapons in the instant case was a demonstration of the legal force the executing officers could legitimately bring to bear in their efforts to conduct a search of the premises, the weapons' visibility could not render this

otherwise peaceful entry a "forcible" one. Absent any other claim of force, there is no reason to invalidate a search because police, being concerned for their own safety and intent on maintaining order once their identity becomes known to those inside the building to be searched, appear at the premises armed.

Appellant next argues that this case presents the intriguing and unanswered question of whether entrance to search may be properly gained by trick or ruse, or if such police conduct is proscribed by the "knock and announce" rule.

The "knock and announce" rule originated in *Semayne's Case*, 5 Coke 91, 77 Eng. Reprint 194 (1604). In that case it was determined that before a sheriff could make a forced entry to execute the King's process, "he ought to signify the cause of his coming and to make request to open doors." Since that time, many jurisdictions have adhered to the requirement of stating one's identification and purpose prior to entry. Some jurisdictions have enacted statutes which are similar to the federal rule set forth in 18 U.S.C. § 3109. In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the United States Supreme Court determined that statement of identification and purpose is a constitutional prerequisite to the entry of a house without the occupants' acquiescence. Consequently, research unveils cases decided on the basis of common law, state law, 18 U.S.C. § 3109, combinations of these authorities and, since *Ker*, the federal constitution. As could be expected, results on a given issue are varied. To date, there has been no Pennsylvania appellate decision dealing with fraud or misrepresentation in execution of a search warrant. In the past, our courts have turned to interpretations of the federal statute to determine the reasonableness of police procedure in given circumstances, and we will do so in this case.

In *United States v. Bustamante-Gamez*, 488 F.2d 4 (9th Cir.), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1973), the court delineated the goals of the announcement rule: reducing the potential for violence to

both the officers and occupants of the house, guarding against needless destruction of private property and furthering respect for individual privacy. It is essential that we keep these purposes in mind when considering the propriety of the use of trick or misrepresentation to gain entry to premises to be searched.

In *Leahy v. United States*, 272 F.2d 487 (9th Cir.), *petition for cert. dismissed*, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1959), a revenue agent with a warrant for the defendant's arrest represented himself as an agent from the county assessor's office, thereby gaining admission. The defendant was arrested and wagering paraphernalia was seized. The court recognized that 18 U.S.C. § 3109 is a codification of the common law and that at common law falsehood, standing alone, would not invalidate an arrest. The court held that there was no constitutional mandate outlawing the use of deception in executing a valid arrest warrant. The court found that it was "breaking" that was condemned by § 3109 and that misrepresentation of identity to gain admittance was not a "breaking" within the rule's proscription. The court echoed a supreme court declaration that "[c]riminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer." *Id.* at 490 (citation omitted). Both violence and destruction of evidence, the court noted, were legitimate fears against which the police were entitled to guard themselves.

Most federal courts faced with this issue have decided, as did the *Leahy* court, that entry by fraud or trick is constitutionally permissible so long as force is not applied. *United States v. DeFeis*, 530 F.2d 14 (5th Cir. 1976); *Smith v. United States*, 357 F.2d 486 (5th Cir. 1966); *Dickey v. United States*, 332 F.2d 773 (9th Cir.), *cert. denied*, 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964); *Jones v. United States*, 113 U.S.App.D.C. 14, 304 F.2d 381, *cert. denied*, 371 U.S. 852, 83 S.Ct. 73, 9 L.Ed.2d 88 (1962). This holding is entirely justified when one perceives that none of the interests articulated in *United States v. Bustamante-Gamez, supra*, is threatened by the use of trick to get an occupant to

open the door of premises to be searched. Violence, personal injury and property damage can be eliminated by employing a ruse. One's right of privacy is voluntarily surrendered when he opens his door to outsiders. The possibility that one will succeed in attempting to destroy evidence, as might occur when there is forewarning of police presence prior to opening the door, is greatly curtailed. On balance, the use of deception does not threaten the purposes underlying the "knock and announce" rules. We would therefore adopt the rule that a ruse or misrepresentation, as allegedly occurred in the instant case, is permissible in the execution of a search warrant if, once a person voluntarily opens the door, the police then announce their authority and purpose prior to entry and do not use force where exigent circumstances do not require it.

Appellant asserts that by responding "Jimmy" when asked who was at the door, the police officer tricked the occupant into opening the door,[2] thereby violating the "knock and announce" requirements. We have found that the door was voluntarily opened, that no forcible entry was effectuated and that both identity and purpose were announced prior to police entry. Under these circumstances, any effort to suppress the evidence derived on the basis of illegal execution of the warrant would have been a futile gesture. Therefore, there is no merit to this aspect of appellant's assertion of ineffective assistance of trial counsel due to counsel's failure to pursue suppression.

Appellant's second ineffectiveness claim likewise concerns counsel's failure to attempt suppression. Appellant states in his brief:

"It is also arguable that the search warrant was defective as applied to Appellant. Appellant's name is nowhere mentioned in the warrant and nowhere does the warrant state that the informant who supplied the magistrate with the evidence on which to issue the warrant had ever made a drug purchase from or ever seen Appellant either in the

2. In point of fact, this was a truthful response, the trooper's name being James R. Drenning.

Broad Street Market area or at 344 Woodbine Street. It is, therefore, questionable whether, as to Appellant, the warrant was based on probable cause and the police had a right to search Appellant once inside the house." (Appellant's brief at 21–22).

■ At trial, the officers testified that appellant dropped seventy-six bags of heroin to the floor. Appellant does not assert that his person was searched to uncover contraband, but that he was not the individual that dropped it to the floor. Thus it is obvious that the evidence in question was abandoned property at the time the police retrieved it.

It was stated in *Commonwealth v. Pollard*, 450 Pa. 138, 143, 299 A.2d 233, 236 (1973), that:

"Although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action." (Footnote omitted). *See also, Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973). We have already determined that the execution of the warrant was lawful police action. Therefore, an attack on the search warrant's contents could not benefit appellant.

■ We note further that even if the contraband was taken from appellant's person, the description in the warrant was sufficient. The warrant provided in part: "This is *to include the search of all persons on the premises* to prevent the removal and destruction of any evidence." (Emphasis added). Although research has revealed no Pennsylvania appellate decision on this specific point, other jurisdictions have denied attacks on the alleged generality of such descriptions. *Samuel v. State*, 222 So.2d 3 (Fla.1969) (warrant authorizing search of building and all persons therein suspected of connection with gaming operations not invalid for lack of specificity since such would be difficult or impossible); *State v. DeSimone*, 60 N.J. 319, 288 A.2d 849 (1972) (warrant directing search of specific auto and "all persons found therein" not a general warrant since individu-

als to be searched were thus identified by physical nexus to the on-going criminal event).

■ In the instant case, the warrant authorized the search of a location where drug transactions had occurred and probable cause existed to suspect that further deals would be transacted. Appellant was on the premises at the time the search was conducted. Since his nexus to the criminal transactions was so established, and his identity was impossible to know at the warrant's issuance, we find that the warrant's description was sufficient to authorize a search of his person. Because it can be determined from the record that the claims which appellant's trial counsel failed to pursue would have been fruitless, we find no basis to appellant's claim of ineffective assistance of counsel.

We would affirm the judgment of sentence.

CERCONE and VAN der VOORT, JJ., join in this opinion.

## OPINION IN SUPPORT OF REVERSAL

SPAETH, Judge:

I am willing to adopt the majority's rule, that "a ruse . . . is permissible . . . if, once a person voluntarily opens the door, the police then announce their authority and purpose prior to entry and *do not use force* . . ." Majority Slip Opinion at 825 (emphasis added). Here, the police *did* use force: they exhibited drawn guns. Thus, the majority's own reasoning shows its result is wrong.

Since the police violated the knock and announce rule, counsel should have filed a motion to suppress. Counsel's failure to file the motion could have had no reasonable basis. Accordingly, counsel was ineffective.

The judgment of sentence should be reversed, and a new trial awarded.

JACOBS, President Judge, and HOFFMAN, J., join in this opinion.