OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant, Samuel Paul, moves to suppress a .3006 calibre rifle and a .380 calibre pistol which were seized from *1087 his apartment pursuant to a search warrant. The defendant claims to have been aggrieved by an unlawful search and seizure. (CPL 710.20, subd 1.) He contends that the search warrant was facially invalid in that it was overbroad and, further, that it was issued without the requisite probable cause. (CPL 690.10, subd 3; 690.45, subds 3, 4.)
PROBABLE CAUSE
The search warrant was issued upon the affidavit of Detective August Jonza. Detective Jonza affirmed that on several dates in April and May, 1978 an unknown person fired shots into the windows of apartments at 372 Central Park West. Spent rounds of ammunition were recovered from the walls of three apartments on three separate dates. Some of the spent ammunition was identifiable as .3006 calibre. The police discovered a number of .380 calibre shell casings in front of the building after one of the firing incidents.
The defendant’s former wife occupied one of the apartments fired upon. The other apartments receiving fire bracketed the apartment of Mrs. Paul. On the evening before the last incident, the defendant telephoned his former wife. He remarked, "I am going to do something crazy.” The firing resumed early the following morning.
The defendant’s former wife informed the police that the defendant drove a burgundy colored Toyota. On one occasion, a named resident observed a small maroon auto move slowly away from the front of the building soon after shots were fired.
Records of the New York City Firearms Control Board disclosed that the defendant registered two weapons. The calibre of these weapons, a .380 automatic pistol and a .3006 rifle, corresponded to the calibre of spent ammunition and shell casings found at the scene of the firings. The defendant registered the guns at his residence, 370 Hawthorne Street, Brooklyn, New York.
The citizen informers who imparted this information to the affiant were inherently reliable. They were victims of the firings. Their names and addresses were disclosed to the issuing Justice. (People v Hicks, 38 NY2d 90.) The police independently verified these civilian complaints by recovering physical evidence and by examining public documents. These independent observations substantially corroborated the civil *1088 ian informers. (People v Slaughter, 37 NY2d 596, 600; cf. People v Hendricks, 25 NY2d 129.)
The court finds that the foregoing information was reliable and sufficient to establish probable cause to believe that the guns were evidence of the commission of a crime (Penal Law, §§ 120.20, 120.25), and that the guns would be found on the defendant’s premises. Under the circumstances, a search of defendant’s apartment for the weapons was imperative. (See People v Taggart, 20 NY2d 335.)
OVERBREADTH
The warrant authorized a search of "the premises of 370 Hawthorne Street, Brooklyn, New York, occupied by Samuel Paul” and of "the person of Samuel Paul”. The warrant gave a detailed physical description of the defendant. The warrant also authorized a search of "any other person therein or thereat who may be found to have such property in his possession or under his control or to whom such property may have been delivered”. The warrant described the items sought as a .3006 calibre rifle and a .380 calibre automatic pistol, identified by make and serial number.
The defendant contends that the warrant failed to identify with sufficient particularity the premises to be searched. He further contends that the authority to search his person and that of "any other person” present was unjustified. He concludes that the warrant was thus overbroad, ab initio, and that any evidence obtained thereunder was unlawfully seized.
The court finds that the warrant was sufficiently particular as to place. It is permissible to describe the place to be searched as "occupied by” a particular person who may be readily identified. (People v De Lago, 16 NY2d 289, cert den 383 US 963.)
The court also finds that the defendant was adequately identified and that the authority to search his person was justified. The warrant not only named the defendant, but also described him in detail and gave the place where he could be found. (People v Rawluck, 14 NY2d 609.) It was reasonable for the issuing Justice to infer that an easily concealable weapon, such as the .380 calibre automatic pistol, which may have been recently used in the commission of a crime, would be found on the person of the suspected criminal.
The court agrees, however, with the defendant’s final asser *1089 tion that the authority to search "any other person” who might be found at defendant’s apartment was unjustified and unsupported by probable cause. There was no reason to believe that any person other than the registered owner would possess the weapons sought. The bare possibility that another person may have received the evidence sought from the suspected owner, does not constitute probable cause to search all of the possible recipients. (United States v Di Re, 332 US 581, 587.)
Under the Criminal Procedure Law, a warrant may constitutionally authorize the search of "any person” present at a designated place (CPL 690.15, subd 2) only under circumstances evincing "probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the articles sought.” (People v Nieves, 36 NY2d 396, 404; see, also, People v Easterbrook, 43 AD2d 719, affd 35 NY2d 913; Commonwealth v Smith, 348 NE2d 101 [Mass], cert den 429 US 944.) These special circumstances were not present in this case. In fact, the affiant never sought the authority to search any person other than Samuel Paul. This broad grant of authority was part of the boiler plate language of the warrant.*
That portion of the warrant which authorized the search "of any other person therein or thereat who may be found to have such property in his possession” was accordingly overbroad and invalid under the Fourth Amendment.
SEVERABILITY
The question remains whether the invalid command to search any person present necessarily vitiates the legitimate commands to search the premises and the person of Samuel Paul.
The Court of Appeals has held that the policy behind the exclusionary rule may be "served but not exalted” by severing the invalid part of a warrant from its valid parts, in a proper case (People v Hansen, 38 NY2d 17, 21). In Hansen, the search warrant discretely described two separate target locations. The court upheld that portion of the warrant directed at the one location for which there was probable cause. The principle of severability was recognized in Hansen as a limited excep *1090 tion to the general rule that a warrant is valid or invalid ab initio, without retrospective judicial revision.
Severability is inappropriate where the warrant is integrally overbroad as to the designated area to be searched or the things to be seized. To be severable, the surviving portion of the warrant must be complete without reference to the severed part. The surviving portion of the warrant must (1) particularly describe a discrete target of the search; (2) be justified by probable cause upon facts originally disclosed to the issuing Judge; and (3) relate to a subject of investigation which is essential to the government’s interest that justified the intrusion at its inception. In addition to these technical requirements, a court should decline to sever a partially valid warrant under circumstances which indicate a violation of the principles underlying the Fourth Amendment (People v Hansen, supra, pp 21-22; see Elkins v United States, 364 US 206, 222-223).
The technical criteria for severability are present in the instant warrant. A warrant may authorize the search of a place only, or of a person only, or of both (CPL 690.45, subd 4). The valid portion of this warrant, directed at the defendant’s premises and at defendant’s person, could have been issued separately, without adding or deleting any of their terms (see People v Green, 33 NY2d 496). The judicial authority to enter the defendant’s premises and to seize the guns in his possession did not depend upon probable cause to search anyone present, or to make an arrest (Zurcher v Stanford Daily, 436 US 547). As a constitutional matter, a warrant to search a place or to seize particular things need not even name the occupant of the place to be searched or the owner of the things to be seized (Zurcher v Stanford Daily, supra, p 555; cf. United States v Kahn, 415 US 143, 155, n 15).
Furthermore, no pretext was employed in this case. The seizure of the guns from the defendant’s property and his person was essential to the government’s express purpose of preventing further shootings at the residents of 372 Central Park West.
Before sustaining the valid portions of the warrant, however, the court must consider the extent to which the invalid severed portion has impaired the defendant’s protectable Fourth Amendment interests. The defendant is entitled to a reasonable expectation of privacy in his person, his possessions, and his premises (Katz v United States, 389 US 347; Simmons v United States, 390 US 377, 389). The defendant’s *1091 proprietary interest in the premises searched and the things seized, or in his own person, did not extend to the persons of others who might have been present when his apartment was searched. Their Fourth Amendment interests were personal, and could not be vicariously assumed by the defendant (Aiderman v United States, 394 US 165, 177, n 10).
The court does not mean to imply that the severability of a warrant depends upon the variables of standing (cf. State v Dobies, 290 A2d 663, 667 [Del]). The defendant might have standing "automatically” to challenge the use of evidence obtained under the invalid severed portion of the warrant, even though no Fourth Amendment interest personal to the defendant had been infringed (Jones v United States, 362 US 257, 265; People v Hansen, supra). Conversely, evidence obtained under the invalid severed portion of a warrant may be used under circumstances where the defendant would have no standing to object (Brown v United States, 411 US 223). Standing depends upon considerations such as the charge preferred and the areas or persons actually searched, which are inappropriate to an evaluation of the validity of a warrant on its face.
The defendant was not searched as a member of the class of "other persons” who may have been present in his apartment. The authority in the warrant to search the defendant was separate and specific (cf. People v Nieves, 36 NY2d 396, 402-403, supra; People v Green, supra). Therefore, the court finds that the overbroad authority to search "any person” present did not violate any per se protectable interest of the defendant (see People v Hansen, supra, p 22).
Accordingly, the court finds the invalid command in the warrant to search "any other person” severable from the valid command to search the defendant’s premises (People v Glasser, NYLJ, Dec. 11, 1967, p 20, col 6; State v Masco, 103 NJ Super 277; Fowler v State, 128 Ga App 501) and from the valid command to search the defendant’s person (People v Hines, 84 Misc 2d 617, affd 62 AD2d 1067; State v Maddasion, 24 Ariz App 492; State v Dobies, 290 A2d 663, 667 [Del], supra).
The motion is, therefore, denied with leave to the defendant to present facts in a supplementary affidavit which establish his standing to contest the use of any evidence seized from others under the invalid portion of the warrant.

 This warrant was a printed form, prescribed by section 797 of the former Code of Criminal Procedure (L 1962, ch 542, § 6, repealed by L 1970, ch 996, § 1).