535 A.2d 611

**COMMONWEALTH of Pennsylvania**

v.

**John HEIDELBERG, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1987.

Filed Dec. 24, 1987.

James K. Vogel, Public Defender, Erie, for appellant.

Paul Susko, Assistant District Attorney, Erie, for Com., appellee.

Before BECK, JOHNSON and HESTER, JJ.

HESTER, Judge:

On December 9, 1986, appellant, John Heidelberg, was convicted following a nonjury trial of possession of a controlled substance. He was sentenced on January 29, 1987, to a fine, costs and seven to thirty days imprisonment. Appellant contends that the trial court erred in not suppressing evidence obtained as the result of an allegedly illegal search warrant. We affirm.

On June 20, 1986, the Erie County police obtained a search warrant to search James Heidelberg, his home, and "all occupants therein." The probable cause affidavit sets forth the following facts and circumstances justifying the search of the described persons and premises. A reliable informant observed James Heidelberg selling cocaine "to other persons at [the] house." He also observed "a large quantity of cocaine" for sale at the residence and in James Heidelberg's possession within the preceding twenty-four hours. Other reliable informants corroborated the fact that James Heidelberg sold controlled substances in his house. A night search was authorized as a result of the averment that the evidence could be easily destroyed or moved if police surveillance were detected.

The following stipulated facts surrounding the execution of the warrant were submitted at the suppression hearing. Erie police executed the search warrant at 12:45 a.m. on June 21, 1986. When appellant answered the door, police saw three males seated around a coffee table upon which the following objects were lying: a propane tank commonly used for freebasing cocaine, a razor blade, a marijuana pipe, and a patina of white powder. The police searched all the individuals present and found a small quantity of hashish on appellant. A small quantity of cocaine was found on one of the other males, but no other controlled substances were discovered on the premises.

The Commonwealth has stipulated that appellant's search was conducted solely pursuant to the authority contained in the warrant for police to search "all occupants" of the apartment. N.T., 10/3/86, at 5–6. This stipulation and the fact that the Commonwealth argues no other basis to justify the search have foreclosed us from considering whether the search could be upheld on other grounds.

We must therefore determine whether a search warrant authorizing a search of "all the occupants" at a given location violates the fourth amendment's particularity requirement that "no Warrants shall issue, but upon probable cause ... particularly describing the place to be searched,

and the persons or things to be seized."[1] It is a question that has never been addressed by an appellate court in this jurisdiction[2] or by the United States Supreme Court.

There are two approaches in analyzing the constitutionality of "all persons present" warrants. One is to strike such warrants as general warrants repugnant to the fourth amendment's specificity requirement. *E.g., Johantgen v. Commonwealth,* 571 S.W.2d 110 (Ky.App. 1978).

We believe the better-reasoned approach,[3] and the one adopted by the majority of other jurisdictions,[4] is found in the cases which analyze each such warrant individually in order to determine whether an "all persons present" warrant was justified under the particular circumstances present when the warrant issued. Illustrative of this approach are two New Jersey cases where opposite conclusions were reached with respect to the different warrants under consideration.

*State v. DeSimone,* 60 N.J. 319, 288 A.2d 849 (1972), contains one of the first discussions of this issue. The

1. The Pennsylvania Constitution similarly provides that "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be." Pa.Const. art. I, § 8. Our analysis of the fourth amendment thus applies with equal force to this provision of the Pennsylvania Constitution.

2. The Commonwealth's argument that *Commonwealth v. Duncan,* 257 Pa.Super. 277, 390 A.2d 820 (1978), is controlling precedent on the issue is misguided. *Duncan* was an en banc decision of six judges, who were equally divided. Three judges discussed the issue, but the discussion is clearly dictum.

3. General comments on this issue are found in W. LaFave, *Searches and Seizures* § 4.5(e) at 230–33 (1987). LaFave observes that "some courts have condemned this form of warrant as 'a general or "blanket" search warrant, which would authorize the indiscriminate search of a large number of people without naming or describing any of them.'" *Id.* at 230, quoting *Crossland v. State,* 266 P.2d 649 (Okl.Crim. 1954).

 LaFave rejects this analysis as unjustified in all cases and discusses the approach of Chief Justice Weintraub in *State v. DeSimone,* 60 N.J. 319, 288 A.2d 849 (1972), the approach we adopt in the text above. LaFave characterizes the *DeSimone* approach as "[u]nquestionably ... correct." *Id.* at 231.

4. *See* W. LaFave, *Searches and Seizures, supra,* at 232; 49 A.L.R.2d 1209; 68 Am.Jur.2d, Searches and Seizures § 79.

warrant directed the search of a described automobile and "all persons found therein," for evidence of illegal gambling. Defendant was an occupant of the car that was the subject of the warrant and lottery slips were found in his possession. Chief Justice Weintraub observed:

> *On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts.* A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.
>
> As to probable cause, it must be remembered that the showing need not equal a *prima facie* case required to sustain a conviction. No more is demanded than a well-grounded suspicion or belief that an offense is taking place and the individual is party to it.... And, with regard to the Fourth Amendment demand for specificity as to the subject to be searched, *there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the on-going criminal event itself.* In such a setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated. To insist nonetheless that the individual be otherwise described when circumstances will not permit it, *would simply deny government a needed*

*power to deal with crime, without advancing the interest the Amendment was meant to serve.*

*Id.* at 321–22, 288 A.2d at 850 (emphasis added) (citation omitted).

The court then determined that the search warrant in that case was constitutionally valid since the affidavit established that the automobile was being regularly used in gambling operations. This made it unlikely that anyone not involved in the gambling operation would have been permitted in the vehicle to observe the illegal activities.

This case can be contrasted with *State v. Sims,* 75 N.J. 337, 382 A.2d 638 (1978), where, using the same analysis adopted in *DeSimone,* the New Jersey Supreme Court struck down a warrant authorizing the search of a service station "and any persons found therein" for gambling paraphernalia. The affidavit supporting the warrant implicated the service station only tangentially in the gambling operation inasmuch as only one telephone bet had been placed there, and, further, the warrant contained no affirmation that gamblers had been observed on the premises placing bets. On this evidence, the court determined that the judge issuing the warrant had no legitimate basis for concluding that probable cause existed to believe that all persons who may have been found at the service station would be engaged in illegal gambling activities.

*State v. Hinkel,* 365 N.W.2d 774 (Minn.1985), in conjunction with *State v. Robinson,* 371 N.W.2d 624 (Minn.App. 1985), also offer an illustration of the majority approach. *Hinkel* involved a warrant authorizing a night search of a house and "all persons on the premises" for liquor and gambling paraphernalia. The house had no liquor license; neighbors had complained about late night activity in the house; and an informant had purchased liquor illegally at the establishment. The Minnesota Supreme Court ruled that probable cause existed for issuance of the authority to search all persons present at the house, observing that there was little likelihood that anyone would be in the house

at the late hour except to participate in the illegal consumption of liquor.

In *Robinson*, the Minnesota Court of Appeals, applying *Hinkel*, struck down a warrant authorizing a drug search of a legally-operating bar and "all persons" in the bar. The warrant was executed during normal operating hours when fifty to eighty patrons were present. Distinguishing *Hinkel*, the court stated that there was little likelihood that everyone in a licensed bar during normal business hours would be involved in criminal activity when, accordingly to the affidavit in the search warrant, only isolated drug transactions had been observed on the premises. *Also compare People v. Easterbrook*, 43 App.Div.2d 719, 350 N.Y.S.2d 442 (1973), *aff'd*, 35 N.Y.2d 913, 364 N.Y.S.2d 899, 324 N.E.2d 367 (1979) (where affidavit supporting warrant alleged that heroin was used and sold in an apartment, criminal activity was of such a nature and the premises so limited that it was likely everyone present was party to the offense; warrant authorizing search of apartment and "other persons present" was upheld) *with People v. Paul*, 96 Misc.2d 1085, 410 N.Y.S.2d 516 (1978) ("all persons present" warrant unjustified where objective of search was weapons which were registered to owner of apartment and where it was not likely that weapons would be on any person present at owner's apartment other than him).

The Massachusetts Supreme Court in *Commonwealth v. Smith*, 370 Mass. 335, 348 N.E.2d 101, *cert. denied.* 429 U.S. 944, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976), analyzed a situation strikingly similar to the one at issue. Heroin had been found on defendant, who was searched pursuant to authority granted in a warrant to search "any person present" at an apartment. The warrant was issued on an informant's affidavit that he had observed heroin sales twice within ten days at the apartment, as well as police surveillance during which police saw known drug traffickers entering and exiting the apartment. Defendant's search had been conducted solely pursuant to the warrant,

and the court rejected his fourth amendment challenge to the search:

> We conclude that, in the circumstances of this case, there was no error in the judge's denial of the motion to suppress. The affidavit and the warrant amply demonstrated that, in all the circumstances, there was probable cause to believe that any person present on the premises described in the search warrant was involved in illegal trafficking in heroin. While we do not mean to derogate in any way from the principle that the law requires a particular description of the persons to be searched pursuant to a warrant, we think that, on the facts of this case, the defendant was sufficiently described. It is clear from our discussion below that only in special circumstances such as those shown in the affidavit here will a search warrant aimed principally at the premises also be held to include validly the search of any person present.

*Id.,* 348 N.E.2d at 103. The court ruled that such warrants should be strictly scrutinized, but, in upholding the warrant, stressed the nature of the contraband, which is easy to hide, the modest size of the apartment, and the fact that drug sales to numerous people in the apartment had been observed. *Cf. Beeler v. State,* 677 P.2d 653 (Okla.Crim. 1984) (where there was no indication that the premises to be searched were frequented by drug buyers or that anyone had been seen purchasing drugs on the premises, warrant authorizing search of all persons in apartment was invalid since there was no probable cause to believe any and all persons in the apartment would be involved in drug trafficking).

We reject appellant's contention that *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), requires the warrant to be struck down. The warrant in *Ybarra* authorized the search of a tavern and the bartender of the tavern for drugs. It was not an "all persons present" warrant.[5] It was issued pursuant to an informant's affida-

---

5. *Commonwealth v. Platou,* 455 Pa. 258, 312 A.2d 29 (1973); *Commonwealth v. Reece,* 437 Pa. 422, 263 A.2d 463 (1970); *Commonwealth v.*

vit that he had seen the bartender with packets of heroin on ten occasions and that the bartender had told the informant he would have heroin for sale on March 1, 1976. On that date, police executed the warrant, searched Ybarra, who was a patron of the tavern, and found heroin on him. The Supreme Court refused to uphold the search, which was not authorized pursuant to the warrant, as a weapons search. It further determined that the police had no probable cause to search Ybarra on other grounds:

> There is no reason to suppose that, when the search warrant was issued on March 1, 1976, the authorities had probable cause to believe that any person found on the premises of the ... [t]avern, aside from [the bartender] would be violating the law. The search warrant complaint did not allege that the bar was frequented by persons illegally purchasing drugs. It did not state that the informant had ever seen a patron of the tavern purchase drugs from [the bartender] or from any other person. Nowhere, in fact, did the complaint even mention the patrons of the ... [t]avern.

*Id.* at 91, 100 S.Ct. at 341–42, 62 L.Ed.2d at 245 (footnote omitted).[6]

Thus, it is clear that *Ybarra* did not involve a situation analogous to the case at issue. Here, the premises to be searched were not open to the public. Moreover, a confidential and reliable informant had actually observed the owner selling cocaine to *other persons at the house.* Additional informants corroborated that the owner was "dealing" controlled substances from the house and consequently must have observed drug sales to third parties on the

*Eichelberger,* 352 Pa.Super. 507, 508 A.2d 589 (1986), and *Commonwealth v. Luddy,* 281 Pa.Super. 541, 422 A.2d 601 (1980), are similarly not on point inasmuch as all dealt with warrants not describing the person who was actually searched nor authorizing the search of all persons present.

6. The Court specifically noted that it was not considering "situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Ybarra v. Illinois,* 444 U.S. 85, 93 n. 4, 100 S.Ct. 338, 343 n. 4, 62 L.Ed.2d 238, 247 n. 4 (1979).

premises. Most important, however, is the fact that within twenty-four hours of issuance of the warrant, a "large quantity of cocaine" had been observed in the house and was available for sale. Under these circumstances, it is unlikely that the owner would entertain in his home anyone other than those engaged in illegal drug trafficking.

 Under the *DeSimone* analysis, it is therefore clear that the search warrant was properly issued. We do not sanction the blind issuance of "all persons present" warrants and have scrutinized strictly the one under consideration. However, the facts contained in this affidavit include: 1) the observation of a significant amount of cocaine available for sale at the residence within twenty-four hours of the issuance of the warrant; 2) observations by three informants of drug sales at the residence; 3) a private residence to be searched; and 4) contraband which can easily be hidden on the body. Given these facts, we uphold the magistrate's determination that probable cause existed to believe that anyone at the residence on the night in question would be involved in illegal drug-related activities. We therefore hold that the warrant was valid under the fourth amendment to the United States Constitution.

Judgment of sentence affirmed.

BECK, J., files a concurring opinion.

BECK, Judge, concurring:

I agree with the majority in rejecting the approach, used in some states, which strikes as invalid all warrants listing "all persons present" as objects of a search. The better-reasoned approach, adopted by the majority, analyzes each warrant under the particular facts present upon its issuance to determine if the "all persons present" language is justified and necessary. Such language is justified only if a sufficient physical nexus is established between the persons likely to be found in the place to be searched and the illegal activity alleged to be occurring there. That is, we must examine the nature of the place to be searched and evaluate

whether there is probable cause that anyone found at that place would be involved in the criminal activity. *See State v. Robinson*, 371 N.W.2d 624 (Minn.App.1985); *State v. Sims*, 75 N.J. 337, 382 A.2d 638 (1978); *State v. DeSimone*, 60 N.J. 319, 288 A.2d 849 (1972). This requirement of a sufficient physical nexus prevents such warrants from becoming general warrants and authorizing dragnet searches. Still, such warrants must be viewed with disfavor, as they harbor a danger of containing the vice of a general warrant. The facts present at the issuance of each such warrant must be scrutinized strictly on a case-by-case basis to ensure that the specificity requirement of the fourth amendment is not violated.

The instant case just barely satisfies that requirement. The affidavit recited that reliable informants observed one James Heidelberg selling cocaine from his residence and that a large amount of cocaine was observed at the residence within the preceding twenty-four hours. Given that a significant amount of cocaine available for sale was observed at the residence, there was sufficient probable cause to believe that anyone found in the residence during the search would be involved in the narcotics transactions or use. The presence of a large quantity of cocaine distinguishes this case from one in which only the sale of drugs from a residence was alleged. Warrants authorizing the search of "all persons present" at a person's home must be examined with extra care. In the case of a dwelling there is a great likelihood that an innocent person could happen to visit the occupant. *See State v. DeSimone*, 60 N.J. at 323, 288 A.2d at 859. A home, which traditionally holds a place of honor under the fourth amendment, is not so physically limited that it is likely that anyone present at the home of a drug dealer would be involved in his or her illegal activity. Also, small quantities of drugs could be hidden from innocent visitors or occupants. Thus, the amount of drugs and sales alleged to have been observed immediately preceding the issuance of the warrant in question provides the probable cause in this case to justify the issuance of that warrant.

Therefore, I would join the majority in affirming appellant's judgment of sentence.