560 A.2d 140

COMMONWEALTH of Pennsylvania, Appellee,

v.

Douglas GILLIAM, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

John L. HEIDELBERG, Appellant.

Supreme Court of Pennsylvania.

Argued March 10, 1989.

Decided June 27, 1989.

Carmela R.M. Presogna, Asst. Public Defender, Erie, for appellant.

William R. Cunningham, Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## ORDER

PER CURIAM.

The Court being equally divided the decision of the Superior Court is affirmed.

LARSEN, McDERMOTT and PAPADAKOS, JJ., vote to affirm.

FLAHERTY, J., filed an opinion in support of reversal joined by NIX, C.J., and ZAPPALA, J.

## OPINION IN SUPPORT OF REVERSAL

FLAHERTY, Justice.

At 12:45 a.m. on June 21, 1986 Erie police executed a search warrant at 1823 Chestnut Street, in Erie. The warrant authorized a search of one James Heidelberg,[1] the premises, and "all occupants therein." When John Heidel-

---

1. Apparently police believed that the residence was owned by a James Heidelberg, and so they named James Heidelberg on the search warrant. They subsequently decided that John Heidelberg was the owner of the premises, but John Heidelberg was not named on the warrant.

berg answered the door, police saw three persons seated around a coffee table on which were a propane tank, commonly used for freebasing cocaine, a razor blade, a marijuana pipe, and a patina of white powder. A search of all persons present revealed a small quantity of hashish on the person of appellant John Heidelberg and a small quantity of cocaine on the person of appellant Douglas Gilliam. Both Heidelberg and Gilliam were charged with possession of a controlled substance. Following a nonjury trial before the Court of Common Pleas of Erie County, Criminal Division, Heidelberg was sentenced to a fine, costs and seven to thirty days imprisonment; Gilliam was sentenced to a fine, costs and sixty days to one year imprisonment. Timely post trial motions were filed and denied, and Superior Court affirmed the convictions on direct appeal. We granted allocatur to address a question of first impression: whether a search warrant authorizing the search of all persons at a particular location is constitutionally permissible, under either the Constitution of the United States or the Pennsylvania Constitution, when those persons are unnamed or unidentified in the warrant. The cases are consolidated because they arise out of the same facts and raise the same legal issue.

Superior Court reasoned that there are two general approaches to the "all persons present" warrant. The first is to invalidate all such warrants on the grounds that they do not meet the specificity requirement of either the Fourth Amendment to the United States Constitution or the parallel requirement of Article 1, Section 8 of the Pennsylvania Constitution.[2] The alternate approach is to analyze each

2. The Fourth Amendment to the United States Constitution provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
   The parallel provision of the Pennsylvania Constitution provides:
   The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and siezures, and no warrant to search any place or to seize any person or things shall issue

warrant individually to determine whether there is probable cause to believe that any persons present are probably involved in a criminal event. This position is perhaps best articulated by Chief Justice Weintraub, of the New Jersey Supreme Court, in *State v. DeSimone:*

On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

As to probable cause, it must be remembered that the showing need not equal a *prime facie* case required to sustain a conviction. No more is demanded than a well-grounded suspicion or belief that an offense is taking place and the individual is party to it.... And, with regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the on-going criminal event itself. In such a setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant

without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant. Article I, Section 8.

is thereby negated. To insist nonetheless that the individual be otherwise described when circumstances will not permit it, would simply deny government a needed power to deal with crime, without advancing the interest the Amendment was meant to serve.

60 N.J. 319, 321–22, 288 A.2d 849, 850 (1972). Superior Court adopted the position set out by Chief Justice Weintraub in *DeSimone,* and because of the fear that an "all persons warrant" might be a general warrant, strictly scrutinized the warrant in this case. That scrutiny led Superior Court to conclude that the warrant was valid for the following reasons: (1) the affidavit supporting the warrant alleged that a "significant amount of cocaine" was seen in the residence within twenty-four hours of issuance of the warrant;[3] (2) three informants witnessed drug sales at the residence; (3) the place to be searched was a private residence, not a public place in which innocent business invitees might likely be present; and (4) the subject of the search was contraband which could easily be hidden on the body, which might allow persons who were present to frustrate the warrant by hiding the contraband on their persons before police were admitted into the dwelling.

Judge Beck, concurring, agreed with the Superior Court majority that in reviewing an "all persons present" warrant a court

must examine the nature of the place to be searched and evaluate whether there is probable cause that anyone found at that place would be involved in the criminal activity.... This requirement of a sufficient physical nexus prevents such warrants from becoming general

3. The affidavit in support of probable cause states:
   Affiant received information from a confidential and reliable informant, that has given accurate and reliable information on drug related investigations, leading to (3) arrests, and several ongoing drug investigations, and said informant has observed the above party selling cocaine, to other persons at house, and has also observed a large, quantity of cocaine, at said residence in owners possession, this for sale, and said observation being in past (24) hours.
   Heidelbergs dealing of controlled substances from said residence corroborated by other confidential and reliable informants.

warrants and authorizing dragnet searches. Still, such warrants must be viewed with disfavor, as they harbor a danger of containing the vice of a general warrant. The facts present at the issuance of each such warrant must be scrutinized strictly on a case-by-case basis to ensure that the specificity requirement of the fourth amendment is not violated.

Judge Beck then concluded that the warrant in the present case passes strict scrutiny because, although the search was to be conducted in a home, where innocent visitors might be present, what is important here is the presence of a large quantity of cocaine and sales allegedly observed immediately prior to the issuance of the warrant.

We agree with Superior Court that although "all persons present" warrants are not favored, it would advance no legitimate constitutional interest to forbid all such warrants. The better approach is to examine each case to see whether, *under strict scrutiny*, the affidavit in support of the warrant makes out a sufficient nexus between the physical location to be searched and the likelihood that every person present at that location is involved in the criminal activity at issue. The inquiry, in other words, should be whether viewing the affidavit *with all ambiguities resolved against the Commonwealth*, it is more probably true than not that every person found at the place to be searched will be involved in the criminal activity which is the subject of the search.

We now turn to the application of that rule to the facts of this case. It is clear from the affidavit that there was probable cause to believe that Heidelberg was selling drugs, that his house was the location of at least some drug sales, and that drugs were stored there. What is unclear is whether there was probable cause to believe that *everyone* found at the Heidelberg house was involved in illicit drug activity. The Commonwealth argues that the "large amount" of cocaine recently seen at the house, the pattern of drug sales recently witnessed, and the time of the of the warrant (12:45 a.m.), lead reasonably to the conclusion that

a person present at the house probably would be involved in drug activity. Heidelberg and Gilliam, on the other hand, argue that no specific amount of cocaine is indicated in the affidavit, other than an allegedly "large quantity"; that the home, which traditionally has been specially protected under the Fourth Amendment, was not sufficiently described in the affidavit as to size so that a magistrate could determine whether it was likely that a "large quantity" of drugs might be concealed from an innocent visitor;[4] and finally, that even if sales were made at the house and even though the contraband in this case is easily concealed, these considerations have nothing to do with whether those present were probably involved in illegal activity.

Resolving all ambiguities in the affidavit against the Commonwealth, as we should in an "all persons warrant," we begin with the observation that "a large quantity of cocaine" is not specific. What is a large quantity to one informant may be a small quantity to another. Without at least a measure of specificity as to how much cocaine is involved, therefore, the alleged large quantity of cocaine does not establish an adequate nexus between the place to be searched and every person present therein. As to the presence of drugs on the premises and recent drug dealing within the premises, since there is no indication that the premises are such that drugs could not be stored or transactions could not be conducted without the knowledge of all those present, these factors also fail to establish a nexus between the premises to be searched and every person present. Concerning the nighttime search, we agree with the Commonwealth that casual visitors are less likely to be present in a person's home in the small hours of the morning, but without more, we do not feel that it is sufficiently *probable*, or even more than possible, that those

---

4. The affidavit describes the premises and persons to be searched as follows:

> 2–story dwelling, green wood, with white trim, front open cement porch, black wrought iron supports, with entrance located on southwest end of house, (south side) near tracks (R.R.) running parallel to tracks, having the address of 1823 Chestnut Street, and curtilage, and all occupants.

present at this time were affiliated with illicit drug activity. All we have in this case is a residence where some drug sales have been made, presumably by the owner or lessee, and where some unquantified amount of drugs is probably stored in an unknown manner. It does not follow from this that any person present at the residence, even after midnight, is *probably* involved in illegal activity. It was certainly reasonable to search the premises, but it was not reasonable to search unnamed persons who might be found on the premises merely because drugs had been recently sold and stored there. It is not enough that persons present *might* be involved. In order for an "all persons warrant" to be valid under Article I, Section 8 of the Pennsylvania Constitution, it must be shown that all persons present were *probably* involved in the illegal activity.

The Commonwealth argues, nonetheless, that the search should be upheld because it was conducted in good faith. The United States Supreme Court, the Commonwealth points out, has ruled that the Fourth Amendment exclusionary rule does not apply to evidence obtained by police who acted in reasonable reliance upon a search warrant issued by a neutral magistrate, even where the warrant was ultimately found to be unsupported by probable cause. The Commonwealth also refers us to *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985), where this Court is said to have adopted a "good faith" exception to the exclusionary rule.

In *Mason* we stated:

[R]ecent cases of this Court have reaffirmed the principle that technical violations of the Rules regarding the issuance and execution of a search warrant do not ordinarily render the search unreasonable nor require the exclusion of evidence, *whereas violations of the Rules which assume constitutional dimensions and/or substantially prejudice the accused may require the exclusion of evidence so seized.*

*Id.,* 507 Pa. at 404, 490 A.2d at 425. (Emphasis added.) We also observed in *Mason* that the federal courts have, indeed,

adopted a good faith exception to the rule otherwise requiring exclusion of wrongfully seized evidence:

The United States Supreme Court has substantially modified the reach of the federal exclusionary rule in recognizing an exception to its application where evidence is seized by police officers in reasonable, good-faith reliance on a search warrant issued by a neutral and detached magistrate, which warrant is subsequently held to be defective. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). That Court would apply this exception even where the defect in the warrant assumes constitutional significance, as where the magistrate has erred in his or her determination that probable cause exists to support the warrant.

*Id.*, 507 Pa. at 405, n. 2, 490 A.2d at 425–26 n. 2. Notwithstanding the federal approach to the Fourth Amendment, in *Mason* we reaffirmed this Court's consistent position that search warrant violations of constitutional dimension require that evidence seized as a result of the violation may be suppressed. The questions before us, then, are whether the violation in this case was one of constitutional dimension, and if it was, whether suppression of evidence is a proper remedy. Our constitution requires that:

[No] warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be. . . .

Article I, Section 8. Plainly, the failure to properly describe a person who is searched pursuant to a warrant is an act "of constitutional dimension," for such searches are no more than dragnets or random fishing expeditions, and they strike at the heart of the protections expressed in Article I, Section 8, that no person in Pennsylvania should be subject to unreasonable searches and seizures. And because such unwarranted government intrusion is so fundamentally at odds with personal freedoms and privacy, it cannot be encouraged or rewarded by allowing the fruits of such

searches to be used as evidence in a court case. The proper remedy, therefore, is suppression, and we would hold that when the Commonwealth fails to properly describe the person to be searched or provide a proper nexus between the place to be searched and unnamed or unidentified persons found therein, it may not rely on what is termed a "good faith" belief that the warrant, subsequently found to be defective, was valid, and the fruits of any searches based on the invalid warrant must be excluded from evidence.

We would reverse the lower court and vacate the judgements of sentence.

NIX, C.J., and ZAPPALA, J., join this opinion in support of reversal.