595 A.2d 86

COMMONWEALTH of Pennsylvania, Appellant

v.

**Wanda LINDSAY.**

Superior Court of Pennsylvania.

Argued March 12, 1991.

Filed June 28, 1991.

Reargument Denied Aug. 30, 1991.

Helen T. Kane, Asst. Dist. Atty., Philadelphia, for Com.

Jeffrey P. Shender, Philadelphia, for appellee.

Before MONTEMURO, JOHNSON and HESTER, JJ.

HESTER, Judge:

The Commonwealth appeals from the order entered in the Court of Common Pleas of Philadelphia County on June 7, 1990, which suppressed certain evidence seized from appel-

lee, Wanda Lindsay. For the reasons set forth below, we reverse and remand for further proceedings.

The procedural history of the case may be summarized as follows. On September 15, 1989, two days after Officer Karen Heywood of the Philadelphia Police Department purchased a quantity of cocaine from an unidentified male, several officers, armed with a warrant, searched the North Gratz Street residence from which the male had obtained the drugs. During the course of the search, Corporal Charles Gurski seized from appellee a bag which contained both packages and vials of cocaine. Accordingly, appellee was arrested and charged with possession, possession with intent to deliver, and conspiracy.

Several months after her arrest, appellee asserted that neither the warrant nor the circumstances then existing supported a search of her person pursuant to the fourth amendment or its analogous state provision, article 1, section 8 of the Pennsylvania Constitution, and moved to suppress the cocaine. On June 7, 1990, the trial court, which previously had conducted an evidentiary hearing on the matter, concluded that the seizure of the cocaine had been improper and entered the contested order. This timely appeal followed.

Preliminarily, we note that the Commonwealth, in conformity with the dictates of *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985), has certified that the trial court's order terminates or substantially handicaps its prosecution of appellee. Accordingly, we conclude that the present appeal is properly before us, *see Commonwealth v. Reviera,* 387 Pa.Super. 196, 563 A.2d 1252 (1989), *allocatur granted,* 525 Pa. 598, 575 A.2d 564 (1990), and address the merits.

Our standard for reviewing the suppression of evidence is well-established. In *Commonwealth v. Smith,* 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990), we discussed that standard and stated:

Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Robinson*, 518 Pa. 156, 159–160, 541 A.2d 1387, 1389 (1988), citing, *Commonwealth v. Hamlin*, 503 Pa. 210, 215–216, 469 A.2d 137, 139 (1983). If the evidence supports the court's factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Jackson*, 359 Pa.Super. 433, 519 A.2d 427 (1986). It is for the trier of fact, rather than the reviewing court, to determine credibility. *Commonwealth v. Capers*, 340 Pa.Super. 136, 489 A.2d 879 (1985).

Keeping these principles in mind, we must examine the facts elicited during the course of the suppression hearing and, thereafter, determine whether the law supports the decision of the trial judge. An examination of the record reveals the following facts.

On the evening of September 13, 1989, Officer Heywood, while conducting an undercover investigation relative to the possible sale of narcotics, approached a North Gratz Street residence. When she reached the front of that building, the officer came into contact with an unnamed male who asked her if she would like to purchase some cocaine. After Officer Heywood replied in the affirmative and gave him twenty-five dollars, the man entered the residence. Several minutes later, he returned with five plastic packets of cocaine.

Following the completion of the drug transaction, Officer Heywood obtained a warrant to search both the residence and all persons therein engaged in either the destruction or concealment of evidence. Subsequently, after the male was arrested on a nearby street corner, several officers entered the house where they observed appellee attempting to conceal a brown paper bag between herself and the baby that she held. One of those officers, Corporal Gurski, removed

the bag from her possession and discovered vials and packets of cocaine. Accordingly, he placed appellee under arrest.

We first consider whether the search of appellee's person is within the ambit of the warrant. In this regard, we note that the warrant, rather than permitting, a search of all persons in the residence, merely authorized searches of persons then engaged in the concealment or destruction of evidence, conduct which constitutes the crime of hindering apprehension or prosecution. *See* 18 Pa.C.S. § 5105(a)(3). Consequently, it is clear that the analysis set forth in *Commonwealth v. Graciani*, 381 Pa.Super. 626, 554 A.2d 560 (1989), and *Commonwealth v. Heidelberg*, 369 Pa.Super. 398, 535 A.2d 611 (1987), *affirmed by an equally divided Court*, 522 Pa. 138, 560 A.2d 140 (1989), which related solely to the propriety of "all persons present warrants," is inapplicable to the present factual situation. Furthermore, as our research has failed to reveal any cases by either the United States Supreme Court or the various courts of this Commonwealth regarding the question of the propriety of warrants that authorize searches of all persons then engaged in specified criminal activity, we will consider other relevant authority.

In his treatise on the fourth amendment, Professor Wayne LaFave discussed the distinction between "all persons present warrants" and warrants permitting the search of all persons engaged in criminal behavior. 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 230–33 (2d ed.1987). In concluding that the latter warrants may not support a personal search, he noted that by their terms, they leave to the executing officers the problem of selecting the persons to be searched on the basis of information that they *then* might have as opposed to information the magistrate has when the warrant is issued. Thus, searches premised upon those warrants alone cannot be supported since the warrants were based upon a probable cause determination made prior to the actual existence of probable cause. Since we find Professor LaFave's suc-

cinct analysis of the issue both logical and persuasive, we adopt it as our own. Turning to the warrant in question, we conclude that under the fourth amendment, it could not support the search of appellee's person. Furthermore, as it is clear that the minimum guarantees provided by the fourth amendment are equally applicable to our analogous state constitutional provision, *Commonwealth v. Danforth,* 395 Pa.Super. 1, 576 A.2d 1013 (1990); *see also Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983), the warrant also will not support the search under article 1, section 8.

Having determined that the warrant was insufficient to support the search of appellee, we address the question of whether appellee's search may be upheld on the basis of probable cause.[1] It long has been clear that warrantless searches are generally deemed unreasonable for constitutional purposes. *See Commonwealth v. Bruner,* 388 Pa.Super. 82, 564 A.2d 1277 (1989). However, if the contested search is supported by probable cause, *see Commonwealth v. Hinkson,* 315 Pa.Super. 23, 461 A.2d 616 (1983), and fits within any of the various well-defined exceptions to the warrant requirement, *see Commonwealth v. McBride,* 391 Pa.Super. 113, 570 A.2d 539 (1990), it will be upheld. Accordingly, we initially must determine whether the search was supported by probable cause.

Probable cause may be defined as facts or circumstances that would warrant a person of reasonable caution in believing that a criminal offense has been or is being committed. *See Commonwealth v. Reviera, supra.* In determining the existence of probable cause, a court must consider all factors and not concentrate on any individual element. *Commonwealth v. Bailey,* 376 Pa.Super. 291, 545 A.2d 942

---

1. We note that appellee originally raised this issue in the trial court. She contended that her search was not supported by probable cause. Notes of Testimony ("N.T."), 5/17/90, at 2. Since the Commonwealth presented testimony opposing appellee's suppression motion, we find that it properly preserved the issue below. Furthermore, even though the Commonwealth may not have explicitly argued this, it impliedly raised the issue by asserting that the police had probable cause to conduct the search. Accordingly, we reject appellee's assertion that this question has not been preserved for our review.

(1988). Furthermore, the court should focus on the circumstances as seen through the eyes of a trained officer. *Id.* Finally, we note that analysis of the question of the existence of probable cause does not concern certainties, but rather practical considerations of everyday life which affect how reasonable and prudent persons act. *Id.*

In the present case, our review of the facts leads us to conclude that Corporal Gurski clearly had probable cause to believe that appellee, just prior to the search, was committing a crime. As Corporal Gurski and his fellow officers entered the North Gratz Street residence, appellee attempted to place a brown paper bag between herself and the baby she held. Since the officers entered the residence to search for drugs, drugs recently had been stored in the house, and drugs easily can be hidden in such a bag, one reasonably could have concluded that appellee was in possession of drugs and also was attempting to conceal this evidence from the police. As we indicated earlier, the concealment of evidence is conduct that constitutes the crime of hindering apprehension or prosecution. We therefore conclude that the officers had probable cause to believe that appellee was committing a crime.

We next consider whether the search in question falls within any of the exceptions to the warrant requirement. In this regard, we note that we long have held that a warrantless search will be excused where the need for prompt police action is imperative due to the possibility that the evidence sought to be preserved will either be destroyed or secreted from investigation. *Commonwealth v. Ehrsam*, 355 Pa.Super. 40, 512 A.2d 1199 (1986). Since the officers were searching the residence in an effort to uncover drugs, which easily are concealed and destroyed, and they had probable cause to believe that appellee was attempting to secret some on her person, it is clear that the need for prompt action was imperative to preserve the sought-after evidence. Consequently, we find the search of both appellee's person and the bag was proper. Thus, the

trial court's decision to suppress the evidence uncovered must be reversed.

Order reversed and case remanded for further proceedings. Jurisdiction relinquished.

JOHNSON, J., files a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting.

I readily join in so much of the Opinion of my colleagues as concludes that the search warrant in question could not support the search of Wanda Lindsay's person under either the fourth amendment of the United States Constitution or article 1, section 8 of the Constitution of the Commonwealth of Pennsylvania. I agree that warrants purporting to authorize the search of "all persons engaged in the destruction and/or concealment of evidence" have no place in the administration of criminal justice in this Commonwealth.

Beyond that, I do not believe that the facts as found by the trial court will permit a conclusion of independent probable cause. Nor do I believe that the search and seizure which we review on this appeal can fit into any of the exceptions to the warrant requirement. Therefore, I must dissent.

When we review an order suppressing evidence, we are not bound by the suppression court's conclusions of law. We are bound, however, by the court's findings of fact, if these findings are supported by the record. *Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689 (1986); *Commonwealth v. James*, 506 Pa. 526, 486 A.2d 376 (1985). Moreover, the determination as to credibility of witnesses is within the sole province of the suppression court, as the trier of fact, which is free to believe all, part or none of the evidence. *Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102 (1984).

When ruling on suppression motions, the suppression court is required to enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights.

Pa.R.Crim.P. 323(i); *Commonwealth v. Haynes*, 395 Pa.Super. 322, 577 A.2d 564 (1990). The Honorable Anthony J. DeFino did reach express findings of fact in this case and did enter them on the record. We are therefor bound by those findings and are not free to embellish them with additional testimony of the prosecution witness, even though uncontradicted.

Corporal Gurski did testify as to the events surrounding his seizing the brown paper bag. That portion of the officer's testimony was as follows:

Q. [Denise Spadacini, A.D.A.]: Tell the Court the circumstances of [Wanda Lindsay's] her arrest?

A. [Corporal Gurski]: Myself and Officer Painter and other members of the narcotics [force] entered the premises in company with uniformed officers, observed the defendant in the hallway next to the living room entrance taking a brown paper bag pushing it between her body and an infant child.

. . . .

Q. Where in fact was the defendant?

A. Standing in the hallway, right by the steps in the entrance on the right side to the living room area.

Q. Can you tell the Court what, if anything, you observed with regard to the [defendant]?

A. I observed the defendant pushing a brown paper bag between her body and the infant she had in her arms.

Q. Approximately how far were you from the defendant when you made that observation.[?].

A. Ten feet.

Q. What, if anything, did you do at that time?

A. I retrieved the brown paper bag, and found it contained 94 clear vials with red caps and 136 red packets, both of which were cocaine.

Q. Where did you retrieve the bag from exactly?

A. From between her chest and the baby. She was holding a baby.

Q.  After you retrieved the bag, what, if anything, did you do?

A.  She was placed under arrest and we—

THE COURT: It was a brown bag which I presume you couldn't see through?

THE WITNESS: Correct.

Suppression Hearing Transcript, May 17, 1990, pages 6–7, R.R. 11a–12a.

In pertinent part, after hearing all of Corporal Gurski's testimony, Judge DeFino found the following:

THE COURT: I am going to enter my findings of fact and conclusions of law.

On September 15, 1989, at 9:15 P.M., Corporal Figorski [sic] and fellow narcotics officers went to.... 2270 North Gratz Street, in the City of Philadelphia, ... armed with a search warrant which provides for a search of all persons on the premises and we are using the terminology, I didn't have the warrant.

Read the specific terminology into the record.

MR. WEIDMAN (ASST. VOL. DEFENDER): All persons present who are engaged in the destruction and/or concealment of evidence.

THE COURT: The affiant on the search warrant was Officer Heywood and in the affidavit of probable cause, she alleged that two days before the search she went to the above address and outside of said premises was approached by an unknown black male and purchased five packets of cocaine.

At the time of the purchase, she gave the unknown black male $25.00 and upon receipt of the money he went into 2270 North Gratz Street, and shortly thereafter returned and handed her the five packets.

*On the night of the execution of the warrant, there were several other persons on the premises, including the defendant who was holding a baby in her left arm and had a brown bag, sandwich type, between her body*

*and the body of the baby. The police grabbed the bag, looked inside and found contraband.*

*The black male,* who two days prior thereto sold the five packets to Officer Haywood, *had been arrested outside the premises a couple of doors away* from 2270 North Gratz Street.

*The police had no information concerning the defendant, Wanda Lindsay, prior to that date, nor were they even aware of [her] existence until they entered the premises.* The house was a two story building row home, nothing unusual in appearance.

While the search was being conducted a woman came into the house and informed the police she was the owner....

....

I want the record to reflect that in this particular case, Officer Haywood, who made the purchase, made it outside the house. She wasn't in the house. The only thing involved in the house was that one purchase.

Also, small quantities of drugs could be hidden from innocent visitors or occupants, thus the amount of the drugs and the sales to have been alleged observed immediately preceding the issuance of the warrant in question provides the probable cause to warrant the issuance of this type of warrant.

My conclusions of law. The affidavit of probable cause only alluded to one transaction concerning five packets of cocaine for $25,00 and said sale was made outside of the premises.

....

*Number 4. The bag in the possession of the defendant was on her person. Since the police could not see what was in the brown bag, they were not justified in looking in the bag.*

Number 5. The issuing authority, based on the facts presented to him or her, in the affidavit of probable cause, did not warrant the issuance of a search warrant of all persons on the premises. *The police knew nothing*

*of the defendant nor did they have probable cause to look in the bag. The taking of the bag and looking into it constituted an unlawful search and violation of the defendant's 4th amendment rights.*

For all the aforementioned reasons, the motion to suppress is granted.

Suppression Hearing Transcript, June 7, 1990, pages 6–8, 10–12. (emphasis added).

The majority refers to the following "facts" in support of its conclusion that Corporal Gurski had probable cause to believe that Wanda Lindsay was "committing a crime":

As Corporal Gurski and his fellow officers entered the North Gratz Street residence, appellee attempted to place a brown bag between herself and the baby she held. Since the officers entered the residence to search for drugs, drugs recently had been stored in the house, and drugs easily can be hidden in such a bag, one reasonably could have concluded that appellee was in possession of drugs and also was attempting to conceal this evidence from the police. As we indicated earlier, the concealment of evidence is conduct that constitutes the crime of hindering apprehension or prosecution. We therefore conclude that the officers had probable cause to believe that appellee was committing a crime.

Majority opinion, page 644.

I cannot agree with the majority's assertion that "drugs recently had been stored in the house." The suppression hearing court, on two occasions, expressed its skepticism concerning such a conclusion. On the second occasion, Judge DeFino declared:

THE COURT: In this case I would have no problem. The police officer sees the individual mentioned buy five vials or whatever it is, the person goes into the house, a person comes out. gives the vials. The police keep the person under surveillance, see the person consummate transactions, go into the house, and come out of the house. Don't see them go in any other houses in the neighborhood.

What about the shrewdy, and I gave an example. I had a case where a defendant was shrewd, he would go in one house, then another house and somebody's car. There were federal agents misleading them as to precisely where the source of his stuff was coming from.

Does that mean the police have the right to go into every place the man went into? God forbid.

I don't know how many people walk into my house for kids and have things in their pocket they aren't supposed to have, then sell it and they say, they saw him come out of such and such a house. Does that give the police a right to do that? Not in this courtroom.

MS. SPADACINI: I would object to the allowing of the amendment.

THE COURT: I will give you an opportunity to submit a memorandum.

(Case Adjourned)

Suppression Hearing Transcript, May 17, 1990, pages 20–21, R.R. 25a–26a.

The search warrant and affidavit would have supported a search of the *premises* for "cocaine, crack, marijuana and/or any other controlled substance listed under the ... Act, weighing and manufacturing devices for the above items, proof of residency and all monies." On this appeal, we are only concerned with whether the officers were justified in seizing a closed, brown paper bag from Wanda Lindsay, opening the bag and then confiscating it along with its contents.

In proceeding with that analysis, I am persuaded by the rule suggested by our Mr. Justice Flaherty writing in the Opinion in Support of Reversal in *Commonwealth v. Gilliam*, 522 Pa. 138, 143, 560 A.2d 140, 142–43 (1989), involving an "all persons present" warrant. There, Mr. Justice Flaherty wrote:

... The better approach is to examine each case to see whether, *under strict scrutiny*, the affidavit in support of the warrant makes out a sufficient nexus between the

physical location to be searched and the likelihood that every person present at that location is involved in the criminal activity at issue. The inquiry, in other words, should be whether viewing the affidavit *with all ambiguities resolved against the Commonwealth,* it is more probably true than not that every person found at the place to be searched will be involved in criminal activity which is the subject of the search. (emphasis in original).

In my view, a warrant purporting to authorize searches of, and seizures from, all persons present "who are engaged in the destruction and/or concealment of evidence" is far more pernicious than a simple "all persons warrant". My colleagues do not appear to disagree with that proposition. Even though the warrant before us differs from the type of plain "all persons warrant" in Gilliam, the application of a "strict scrutiny" test and resolution of ambiguities against the Commonwealth would seem to me to be appropriate on this appeal. While I firmly believe that the evidence in this case was unlawfully seized, a review of the arguments of my colleagues, and of the Commonwealth, assists me in concluding that the order granting suppression should be affirmed.

The majority would conclude that the arresting officers would have been justified in believing that a criminal offense had been or was being committed at the time they entered the premises at 2270 North Gratz Street. I vigorously disagree. The facts found by Judge DeFino, and supported by the record, are as follows. Two days before the search, Officer Haywood had gone to the subject address and was approached by an unknown black male. She purchased five packets of cocaine. At the time of the purchase, she had given the unknown black male some money and the male went into 2270 North Gratz Street. Shortly thereafter, he came back out and handed her the packets.

Prior to the police entering 2270 North Gratz Street on the night of the execution of the warrant, the unknown black male, who had been involved in the sale two days

before, was arrested on the sidewalk several doors away from 2270 North Gratz Street. The police had no information concerning Wanda Lindsay prior to the evening of her arrest, nor were they even aware of her existence until they entered the premises. The officer who had made the purchase two days before, Officer Karen Heyward ("Heywood" in the official Suppression Hearing Transcript), never was inside the premises. Small quantities of drugs could be hidden from innocent visitors or occupants.

When Officer Gurski, Officer Painter and other members of the narcotics field unit entered the premises, Wanda Lindsay was standing in the hallway along with several other persons. Judge DeFino found that Lindsay "was holding a baby in her left arm and had a brown bag, sandwich type, between her body and the body of the baby. The police grabbed the bag, looked inside and found contraband."

These facts clearly would not permit any reasonable person to believe that a crime had been committed or even was being committed. Concealment of evidence is a crime, as the majority suggests. However, the elements of that crime are not present on these facts. In order to commit the offense of hindering apprehension or prosecution, the actor must conceal or destroy evidence of the crime "with intent to hinder the apprehension, prosecution, conviction or punishment *of another* for crime." 18 Pa.C.S. § 5105(a). In this case, the only other person even conceivably involved in these transactions had already been arrested outside the premises and several doors away. And there was not one scintilla of testimony to suggest any connection between the defendant, Wanda Lindsay, and the unknown black male who had already been arrested. The majority does not tell us exactly whose apprehension or prosecution Lindsay was intending to hinder. Nor does the majority even suggest that the placing of the sandwich bag between her body and the body of the baby would permit any *inference* of intent to hinder the prosecution of another person other than Lindsay herself.

Hindering apprehension involves the common law crime of accessory after the fact to any felony. In order to be an accessory after the fact, one has to know that a felony has been committed. *Commonwealth v. Finkelstein*, 191 Pa.Super. 328, 156 A.2d 888 (1959). While it may not be necessary to prove the earlier crime, as part of establishing the commission of the obstruction of justice offense, it still is necessary to establish that the charged party *intended* to hinder the apprehension or prosecution *of another*. *Commonwealth v. Lore*, 338 Pa.Super. 42, 60–61 n. 10, 487 A.2d 841, 851 n. 10 (1984).

My colleagues make no attempt to connect their conclusion that Lindsay "was attempting to conceal this evidence from the police" with the necessary element that such concealment be done with the intent to hinder the apprehension of another. Concealing material on one's person to prevent or delay one's *own* arrest is ordinarily not a crime. It may well be human nature, but it is not a crime.

Without the necessary elements to support an inference that a crime was being committed, and since I would agree with the suppression hearing court that a closed, opaque sandwich bag tells the observer nothing about its contents, I must conclude that probable cause did not exist to support the search of Lindsay.

Having concluded that there was no probable cause to justify the search of Lindsay, I must also conclude that there are no facts before us to justify a search based upon exigent circumstances. My colleagues rely on *Commonwealth v. Ehrsam*, 355 Pa.Super. 40, 512 A.2d 1199 (1986) for the proposition that a warrantless search will be excused where the need for prompt police action is imperative due to the possibility that evidence sought to be preserved will either be destroyed or secreted from investigation. *Ehrsam* is clearly inapposite. In that case, police officers had gone to the scene of a shooting and were told that a recalcitrant female tenant had shot her landlord and was still in the house. We there reasoned that since the officers had been told that the tenant had already shot one person,

considerations for their own safety as well as that of others clearly justified their entry into the house. Once inside, they were entitled to seize items in plain view. We concluded in *Ehrsam* that the photographs, measurements and officers' recollections which were subsequently admitted into evidence were all of readily observable features of the interior of the house. The items seized were thus in plain view. *Ehrsam*, 355 Pa.Super. at 52, 512 A.2d at 1205.

We went on to conclude that the warrantless search was also justified by a need to insure that the weapon used in the shooting or the bullet casings not be removed or destroyed, given the recently reported crime. We thus concluded that exigent circumstances involving two separate conditions existed in the *Ehrsam* case: (1) preservation of evidence likely to be destroyed or secreted, *Commonwealth v. Holzer*, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978) and (2) removal of any threat of physical harm to police officers or other innocent individuals, *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 27, 461 A.2d 616, 618 (1983). Neither of those circumstances confront us here.

When the police officers entered the premises at 2270 North Gratz Street, they had absolutely no reason to believe that Wanda Lindsay—of whose existence they were not even aware!—had been involved in any crime or was in possession of any contraband. It was not until Officer Gurski had seized the sandwich bag, opened it, and looked in it that he was aware of any possible contraband on the premises. And a brown paper bag resting between a woman and a baby being held in the woman's left arm does not constitute a threat of physical harm to anyone.

I conclude that exigent circumstances did not exist and a search and seizure without a warrant must necessarily fail.

In summary, the search warrant and affidavit which purported to authorize the search of "any and all persons present who are engaged in the destruction and/or concealment of evidence" impermissibly seeks to predict future probable cause and is, therefore, invalid. The warrant will not justify the search and seizure of the bag possessed by

Wanda Lindsay. The facts as found by the suppression hearing court are supported by the record and clearly rebut any suggestion of probable cause independent of the warrant. Even if the executing officers might reasonably be said to have found probable cause, the facts on this appeal will not permit a finding of exigent circumstances.

Judge DeFino's conclusions are also supported by the record. Since the brown sandwich bag was in the possession of Lindsay, and since the police could not see what was in the bag, they were not justified in looking in the bag, given the limited facts known to them at the time they entered the premises. The police knew nothing of Lindsay nor did they have probable cause to look in the bag. The taking of the bag and the looking into it constituted an unlawful search and violation of Lindsay's fourth amendment rights.

The order of June 7, 1990 which granted the defense motion to suppress physical evidence should be affirmed. I must therefore dissent.