**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**James W. HAWKINS, III, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 7, 2005.

Filed July 27, 2005.

Sandra I. Thompson, York, for appellant.

George N. Marros, Assistant District Attorney, York, for Commonwealth, appellee.

Before: DEL SOLE, P.J., McCAFFERY, and POPOVICH, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, James W. Hawkins, III, appeals from the judgment of sentence entered on July 12, 2004, after the Honorable John S. Kennedy convicted Appellant of possession with intent to deliver cocaine,[1] and possession of a small amount of marijuana.[2] Specifically, Appellant asks us to determine whether the trial court acted properly in denying Appellant's motion to suppress evidence which was confiscated from him after he arrived at a residence where a search warrant was still in the process of being executed. We decline Appellant's invitation to find that his late and unfortunate arrival at the premises still being searched put him outside the purview of the "all persons present war-

rant" which had been issued, and we affirm.

¶ 2 The relevant facts and procedural history are as follows. On October 31, 2003, Trooper Christopher C. Keppel and an arrest team of twelve (12) officers, executed a search warrant which authorized the search of the residence, outbuildings, curtilage, and "all persons ... present at the time the warrant is executed" at 99 Griffith Road, Peach Bottom Township, York County. (Notes of Testimony ("N.T.") Suppression Hearing, 4/13/04, at 9–11). The residence and property belonged to Mr. William Widener, and the search was for drugs, drug paraphernalia, and evidence of drug-dealing by Mr. Widener and others. During the search of the residence, Trooper Keppel was acting as the evidence custodial officer and was in the kitchen performing his duty of logging the evidence. (*Id.* at 11). At some point during the execution of the search warrant, and while people were still flex-cuffed in the living room, Appellant arrived at the Widener residence with a group of three (3) individuals. One member of Appellant's group knocked on the front door, and Trooper Keppel, who was working undercover, answered. After engaging in a brief conversation, during which one member of the group demanded repeatedly to see Mr. Widener, Trooper Keppel advised them of the existence of the warrant, brought them into the house, and proceeded to search all four individuals. (*Id.* at 12–14). Trooper Keppel discovered a bag of cocaine and a bag of marijuana in Appellant's pocket, and arrested Appellant. Appellant filed a pre-trial motion to suppress the evidence, which the court denied after a hearing on April 13, 2004. After a bench trial, Appellant was convicted of the above-cited offenses and on July 12, 2004,

---

1. 35 Pa.C.S.A. § 780–113(a)(30).

2. 35 Pa.C.S.A. § 780–113(a)(31).

he was sentenced to an aggregate term of eighteen (18) to thirty-six (36) months' incarceration. Appellant filed this timely appeal raising the following issue for our review:

> WHETHER THIS HONORABLE COURT MUST FIND THAT THE SUPPRESSION COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE?

(Appellant's Brief at 3).

¶ 3 Appellant contends that the suppression court erred in denying his motion to suppress because Appellant arrived "after the warrant was executed", so his search was not authorized by the "all persons present" warrant.[3] (Appellant's Brief at 10–11). We disagree.

¶ 4 When reviewing the denial of a suppression motion, we are mindful that our standard of review

> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003) (citations omitted).

¶ 5 Although generally disfavored, an "all persons present warrant" is constitutional when the totality of circumstances establish a sufficient nexus between the persons to be searched, the location, and the original activity suspected. *Commonwealth v. Graciani*, 381 Pa.Super. 626, 554 A.2d 560, 561 (1989); *Commonwealth v. Heidelberg*, 369 Pa.Super. 398, 535 A.2d 611, 614 (1987), affirmed *sub nom. Commonwealth v. Gilliam*, 522 Pa. 138, 560 A.2d 140 (1989). "So long as there is good reason to suspect or believe that anyone present at the anticipated event will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." *Heidelberg, supra* at 613 (quoting *State v. DeSimone*, 60 N.J. 319, 321–22, 288 A.2d 849, 850 (1972)).

¶ 6 We have previously described the factors sufficient to justify an "all persons present" warrant as follows:

> In *Heidelberg*, we found a sufficient nexus to justify issuance of an "all persons present" warrant based upon the fact cocaine sales had been observed between the occupant and other persons at the house within twenty-four hours of the application for the warrant, a large quantity of cocaine was believed to be kept at the house, the place to be searched was a private residence, and the crime suspected involved contraband which could easily be hidden on the body. [535 A.2d at 615]. We reasoned that the likelihood that anyone present at the time of the execution of the warrant might be involved in the cocaine distribution or be willing to hide evidence of the operation on their person was sufficient to justify issuance of the "all persons present" warrant.

---

3. Appellant also contends that there was no reasonable suspicion to conduct a *Terry* pat down of his person. (Appellant's Brief at 12–13). As a result of our holding that the search was legitimately authorized by the "all persons present" warrant, there is no need for us to examine this contention.

*Graciani, supra* at 561–562. In *Graciani,* this Court relied on facts similar to those in *Heidelberg* to justify an "all persons present" warrant, except that the cocaine sales had been observed within three (3) days of the warrant application, and the existence of large quantities of drugs could only be inferred from the officer's affidavit. *Id.* at 562.

■ ¶ 7 In the case *sub judice,* similar factors existed and there was a sufficient nexus to justify the search of *any individual* present at 99 Griffith Street during the execution of the warrant. A confidential informant had purchased cocaine in the residence within seventy-two (72) hours of the warrant application and had observed several other people using, buying, or selling cocaine therein. (Affidavit of Probable Cause, dated 10/31/03, Exhibit B). Other confidential informants had told Trooper Keppel that several drug dealers used the residence as a place to sell drugs, and he had observed a high volume of vehicle traffic at the residence. (N.T., 4/13/04, at 10). The location to be searched was the private residence, outbuildings, and curtilage owned by Mr. William Widener, and the crime involved drugs which could easily be hidden on the body. (*Id.* at 9–10). Therefore, we conclude that there was a sufficient nexus to justify the "all persons present" warrant which legitimately authorized the search of *any individual* present during its execution.

■ ¶ 8 Appellant does not dispute this conclusion, but contends that the terms of the warrant do not apply to him because

he was not "present during its execution".[4] We disagree.

■■ ¶ 9 A search warrant is not considered "fully executed" until the police officers have completed their search and secured all individuals within the residence.[5] An individual who knocks on the door and arrives while officers are searching the premises is considered to have arrived during the execution of the search warrant. *See Commonwealth v. Hoffman,* 403 Pa.Super. 530, 589 A.2d 737, 741 (1991) (holding that individual is considered "present" during the execution of a warrant when he knocks on the door fifteen (15) minutes after the police have arrived to conduct the search); *Commonwealth v. Merriwether,* 382 Pa.Super. 411, 555 A.2d 906, 909–910 (1989) (stating that individual is considered "present" during the execution of a warrant when he knocks on the door while police are conducting a search of the residence). In addition, the Pennsylvania Rules of Criminal Procedure specifically provide that *while executing a search warrant,* a police officer should make an inventory of items seized in the presence of the person from whose possession or premises the property was taken. Pa.R.Crim.P. 209. That is precisely what Trooper Keppel was doing at the very moment that Appellant and the others knocked on the door.

¶ 10 Instantly, the certified record indicates that Appellant walked up to the door of the Widener residence while police officers were still searching for evidence, were in the process of securing individuals, and

---

4. As an aside, we note that Appellant's reliance on *Commonwealth v. Wilson,* 429 Pa.Super. 197, 631 A.2d 1356 (1993), is misplaced. A warrant with specific authorization to search "all persons present" is materially distinguishable from a warrant which does not have this specific authorization. *See Heidelberg, supra* at 614 n. 5; *Graciani, supra* at

561. Unlike Appellant's situation, the warrant in *Wilson* did not contain an authorization to search "all persons present". *Wilson, supra* at 1357.

5. See BLACK'S LAW DICTIONARY 609 (8th ed.2004) (defining 'execute' as "to perform or complete" a duty).

were still cataloguing and inventorying the evidence found during the search itself. Accordingly, Appellant falls within the category of "present during the execution of the warrant" and thus he was properly searched within the ambit of its reach.

¶ 11 Based on the foregoing analysis, we conclude that the suppression court properly denied Appellant's motion to suppress. Accordingly, we affirm Appellant's judgment of sentence.

¶ 12 Judgment of sentence affirmed.