# Commonwealth v. Elmore

*Christopher Eric Parisi, assistant district attorney,* for Commonwealth.

*Timothy Peter Wile, assistant public defender,* for defendant.

CARPENTER, *J.,* May 27, 2010—

## FACTUAL AND PROCEDURAL HISTORY

Appellant, Darrell Elmore, appeals from the judgment of sentence entered on March 29, 2010, following his conviction of six counts of possession with intent to deliver, two counts of criminal conspiracy, six counts of possession of a controlled substance, two counts of drug paraphernalia and resisting arrest.

Appellant was involved in a large-scale drug operation along with his two co-defendants, Diyon Jefferson and

Darron Barnett. The drug operation, which involved the selling of cocaine, marijuana and heroin, was run out of two principal locations, 603 West Main Street, Norristown, apartment number 2 and 558 Chain Street, Norristown.

On December 12, 2008, a search warrant was executed on 603 West Main Street, apartment number 2. (Bench trial 1/11/10 pp. 181-83.) Once inside, Detective David Holtzman, of the Montgomery County District Attorney's office, County Detective Bureau, encountered Jefferson, Barnett and Danielle Barfield. *Id.* at 183. The search of the premises uncovered $322 on Barnett's person, and two Sentry safes in the kitchen. *Id.* at 185-86. The first Sentry safe concealed 33 bags of heroin with a Bently stamp, 191 bags of heroin, a 9 millimeter handgun and an unloaded magazine for that handgun. *Id.* at 187-90. The second Sentry safe concealed 201 blue bags of crack cocaine, four knotted sandwich bags containing 201 individual bags of crack cocaine and $1,200 in U.S. currency. *Id.* at 191, 193. In the kitchen area of the apartment, a Triton T2 digital scale, a blender and measuring cup, all with cocaine residue, were found. *Id.* at 192. The search of the bedroom area revealed twelve small blue bags of crack cocaine, seven plastic vials of marijuana with a butterfly imprint, seven bags of heroin with a Bently imprint, an SKS assault rifle with a fully loaded magazine and a Taurus gun case for a .40 caliber weapon. *Id.* at 194-98.

While the search was being conducted, appellant was encountered by the front door of apartment number 2 by Lieutenant Stephan Forzato of the Montgomery County

District Attorney's Office, Narcotics Enforcement Team.[1] After a brief altercation with appellant, appellant was arrested and subsequently searched. (Suppression hearing 1/10/10 pp. 35-46.) Detective Erick Echevarria, a detective in the Montgomery County Detective Bureau, Narcotics Enforcement Team conducted the search of appellant's person. (Bench trial v. 2, 1/12/10 p. 39.) On appellant, the detective found 79 small packets of cocaine in yellow bags weighing 6.99 grams, approximately four ounces of marijuana and $1,323. Also seized were two sets of keys. *Id.* at 42, 49. One of the keys opened one of the Sentry safes. *Id.* Also, the detective noticed that appellant had the smell of dog feces on him. *Id.* at 43. During processing, Appellant gave his address as 558 Chain Street. (Bench trial 1/11/10 p. 210.)

The investigation led officers to conduct surveillance of 558 Chain Street later on December 18, 2008. *Id.* at 51. The surveillance began at 1 p.m. and lasted for about two hours. *Id.* During that time, Detective James Vinter of the Montgomery County District Attorney's office, Narcotics Enforcement Team, observed six individuals approach that location. *Id.* Each would knock on the door, and when there was no answer, a few of those people would then look in the window. *Id.* After seeing no activity inside 558 Chain Street, two of the individuals were then followed to 603 West Main Street. *Id.*

---

1. The testimony from the suppression hearing of Lieutenant Forzato was stipulated to at the bench trial. (Bench trial v. 2, 1/12/10 p. 66.)

Subsequently, a search of 558 Chain Street was conducted. Detective Vinter was able to open the front door by using one of the keys recovered off of appellant. *Id.* at 64. Upon entering, Detective Vinter observed feces from a pit bull puppy all over the apartment *Id.* at 62. The search uncovered in significant part, 80 yellow bags containing crack cocaine in the kitchen cabinet, 43 bags of crack cocaine in the kitchen, 3 bags of cocaine on the kitchen table, 42 blue bags of crack cocaine on the kitchen table, a chunk of crack cocaine on a glass plate along with a razor blade, box of sandwich bags, bag of rubber bands, a Triton T2 scale. *Id.* at 56-59.

On January 10, 2010, a suppression hearing was conducted. At the conclusion of which, we denied appellant's motion to suppress. On that same date, a three-day bench trial commenced. We found appellant guilty of the aforementioned charges. On March 29, 2010, we sentenced appellant to an aggregate term of eight to 26 years' imprisonment. This timely appeal followed.

## ISSUES

I. *Whether This Court Properly Denied Appellant's Motion To Suppress.*

## DISCUSSION

I. *This Court Properly Denied Appellant's Motion To Suppress*

The suppression hearing established the following relevant facts.

On December 18, 2008, a SWAT team made entry at the 603 West Main Street location, apartment number 2. (Suppression hearing 1/11/10 p. 38). Lieutenant Forzato entered after the SWAT team, and assisted with the execution of a search warrant, which authorized the search of "all persons present inside the apartment." *Id.* at 36, see also, search warrant, "C-S 1." Lieutenant Forzato was familiar with the investigation, and knew from confidential informants that firearms were present at that location, including a large assault rifle and handguns. *Id.* He also knew that individuals inside that location were handling these firearms during controlled buys. *Id.* Once inside that location, a fully loaded SKS assault rifle, along with an attachment for a grenade launcher was found. *Id.* at 38. A 9 millimeter semi-automatic handgun was also uncovered. *Id.* at 39. Also significant was an empty box for a .40 caliber Taurus semi-automatic and ammunition for that weapon, which was also discovered. *Id.*

At approximately 6:40 a.m., while the search was in progress, appellant came within a step of the front door of apartment 2. Lieutenant Forzato was standing in the hallway, with other detectives, just outside the apartment, which is on the first floor. *Id.* at 40. He was wearing a ballistic vest that read "police" in bold white letters. *Id.*

The entryway into this particular apartment building involved an unlocked door, then there was a vestibule and then a second set of doors that was locked. *Id.* The second set of doors led right into a hallway, and apart-

ment 2 was directly to the left. *Id.* Also, there was a set of stairs in the hallway that led to the second floor apartments. *Id.* Three apartments were on the first floor. *Id.*

Lieutenant Forzato saw appellant come in from the first door to the vestibule. *Id.* at 42. Appellant's head was down, his right hand was visible and his left hand was in his hoody pocket. *Id.* Appellant opened the second set of doors, and went towards apartment number 2. *Id.* Appellant was within one step from the door of apartment number 2. *Id.* Appellant did not see Lieutenant Forzato and the other detectives, initially. He only looked up when the lieutenant said, "Where are you going?" *Id.* At that point, appellant looked at Lieutenant Forzato's vest and the word "police." *Id.* The lieutenant then said, "What's in your hand?" *Id.* Appellant did not respond.

Appellant then turned to his left, still with his left hand in his pocket, and he started leaving the apartment building. *Id.* at 43. Appellant made it through one set of doors. *Id.* The lieutenant made the decision that there was a possible danger to him and the others when appellant was not willing to reveal what was in his hand, together with his knowledge of the weapons that were on the premises. *Id.* He was afraid that there might be a gun in appellant's pocket and that appellant might use it. *Id.* Lieutenant decided to take action. He went for Appellant's left hand, and said "stop." Lieutenant Forzato grabbed appellant's hand. *Id.* Appellant tried to run away, he fell down, he resisted, he fought, threw elbows and kept his left hand away as best he could. *Id.* at 43-44.

During the struggle, the lieutenant was able to feel a large and rounded bulge near appellant's concealed hand. *Id.* at 44. His concern was that there was possibly a weapon there. *Id.* at 45. The lieutenant explained that he knew before he encountered appellant approaching the apartment that an empty box for a firearm was uncovered during the search. *Id.*

After appellant was arrested, he was searched. In part, the search uncovered two sets of keys. One of the keys opened a Sentry safe inside apartment number 2, in which drugs and a firearm were concealed. Another key was later found to open the front door at 558 Chain Street.

When reviewing the denial of a suppression motion, the standard of review employed by our appellate court is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the prosecution prevailed in the suppression court, only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole, may be considered. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Hall,* 929 A.2d 1202, 1206 (Pa. Super. 2007).

First, on appeal appellant asserts that he was not within the scope of the search warrant for the premises and persons at 603 West Main Street, apartment number

2. Appellant argues that police had no reasonable suspicion to stop, detain, search or question him when he walked into the common area of 603 West Main Street. Further, appellant contends that the police had no reasonable basis to believe that he was involved in criminal activity at that location.

Next, on appeal appellant contends that the Norristown Police lacked probable cause to search his pockets when he refused an officer's direction to stop. Appellant argues that the police had no reasonable suspicion that he was engaged in any criminal activity. Additionally, appellant asserts that the police failed to articulate what they felt during a pat-down was readily apparent to be either a weapon or contraband making the "plain feel" doctrine inapplicable. Further, appellant claims that the police lacked reasonable suspicion that he was armed and dangerous so as to justify a *Terry* search. Because these two issues involve the same analysis, we will address them simultaneously.

"Although generally disfavored, an 'all persons present' warrant is constitutional when the totality of circumstances establish a sufficient nexus between the persons to be searched, the location, and the original activity suspected." *Commonwealth v. Hawkins,* 880 A.2d 678, 680 (Pa. Super. 2005) (citing, *Commonwealth v. Graciani,* 381 Pa. Super. 626, 630, 554 A.2d 560, 561 (1989). "So long as there is good reason to suspect or believe that anyone present at the anticipated event will probably be a participant, presence becomes the descriptive fact satisfying the aim of the

Fourth Amendment." *Commonwealth v. Heidelberg,* 369 Pa. Super. 398, 402, 535 A.2d 611, 614 (1987).

In *Hawkins,* there was an "all persons present" warrant served on a residence. *Id.,* 880 A.2d at 679. During the execution of the search warrant, the defendant arrived at the residence with three other individuals. *Id.* One of those individuals knocked on the door of the residence, and asked to speak with the target of the investigation. *Id.* The officer brought the four individuals into the residence and advised them of the existence of the warrant. *Id.* He then proceeded to search all of them. *Id.* The officer found a bag of cocaine and a bag of marijuana in the defendant's pocket. *Id.* The defendant was arrested. *Id.*

The defendant filed a pretrial motion to suppress the evidence, which was denied by the trial court. *Id.* The defendant appealed, challenging the trial court's suppression ruling, arguing that his search was not authorized by the "all persons present" warrant. *Id.* at 680.

In reviewing the trial court's ruling, our Superior Court analyzed whether the arrival at the scene of a residence, that is the subject of an ongoing search pursuant to a search warrant, satisfies the "all persons present" search warrant. *Id.* 680-81. The *Hawkins* court held that where the totality of circumstances establish a sufficient nexus between the persons to be searched, the location, and the original activity suspected, an "all persons present" warrant is constitutional. *Id.* at 680. The *Hawkins* court noted four factors sufficient to justify an "all persons present" warrant as follows:

"In *Heidelberg,* we found a sufficient nexus to justify issuance of an 'all persons present' warrant based upon the fact cocaine sales had been observed between the occupant and other persons at the house within 24 hours of the application for the warrant, a large quantity of cocaine was believed to be kept at the house, the place to be searched was a private residence, and the crime suspected involved contraband which could easily be hidden on the body . . . . We reasoned that the likelihood that anyone present at the time of the execution of the warrant might be involved in the cocaine distribution or be willing to hide evidence of the operation on their person was sufficient to justify issuance of the 'all persons present' warrant." *Hawkins,* 880 A.2d at 680.

In this case, while the search of the apartment was still in progress, appellant was within one step of the apartment before the police made any contact with him. (Suppression hearing 1/11/10 p. 42.) Detective Forzato had every reason to believe that appellant was going to enter apartment number 2 had he not encountered the police there. He was not in the common area of the apartment building, he was not walking towards another apartment on the first floor and he was not attempting to access the stairs which headed towards the second floor.

There was a sufficient nexus to justify the search of any individual present at 603 West Main Street during the execution of the warrant. There were multiple targets in this investigation, which were observed by a number of confidential informants dealing crack cocaine and

heroin. (Suppression hearing 1/11/10 p. 37); see also, affidavit of probable cause, dated 12/17/08, C-1. These confidential informants described a large-scale, ongoing drug sales operation. *Id.* The location to be searched was a private residence, and the crime involved drugs which could be easily hidden on the body. Therefore, the "all persons present" warrant was justified. Accordingly, the search of appellant was lawful, and all items seized as a result of that search were admissible.

Alternatively, we determined that Lieutenant Forzato did possess reasonable suspicion that either criminal activity was afoot or that appellant was armed and dangerous. "[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." See *Commonwealth v. Reppert,* 814 A.2d 1196, 1204 (Pa. Super. 2002) (citing *Commonwealth v. Cook,* 558 Pa. 50, 57-58, 735 A.2d 673, 677 (1999)). "The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a *'particularized and objective basis'* for suspecting the individual stopped." *Id.* at 1203-1204 (emphasis in original) (quoting, *In re D.M.,* 566 Pa. 445, 449, 781 A.2d 1161, 1163 (2001)). Therefore, the fundamental inquiry of a

reviewing court must be an objective one, "namely, whether 'the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *Id.* at 1204 (quoting, *Commonwealth v. Zhahir,* 561 Pa. 545, 551, 751 A.2d 1153, 1156 (2000)).

In this case, Lieutenant Forzato articulated specific facts from which he could infer that appellant might be armed and dangerous. Appellant was approaching apartment number 2, and was within one step of the apartment before he noticed Lieutenant Forzato, who was clearly marked as a police officer. Appellant had his left hand concealed in his pocket. Knowing that two firearms and an empty firearm case was found in the apartment, the lieutenant was afraid that appellant had a weapon. The Lieutenant requested appellant to remove his left hand. appellant turned to his left, in an attempt to leave. Lieutenant Forzato was concerned that appellant would turn and fire at the numerous officers inside the apartment building. (Suppression hearing 1/11/10 p. 46.) When appellant refused to remove his concealed hand from his pocket, and attempted to leave, Lieutenant Forzato had every reason and valid concern to take action. And when the lieutenant did so, and appellant resisted him, it escalated into probable cause to arrest for resisting arrest under 18 Pa.C.S. § 5104.[2]

---

2. Section 5104 reads as follows:

"A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest

Accordingly, the lieutenant was authorized in making an arrest without a warrant for a misdemeanor committed in his presence, and his search of appellant subsequent to arrest was proper. Therefore, the evidence that was seized subsequent to a lawful arrest was admissible.

Appellant's last issue on appeal asserts that the Norristown Police perpetrated an illegal search when they seized keys from appellant and then proceeded to use those keys in an attempt to open doors without first obtaining a search warrant. Appellant argues that he possessed a reasonable expectation of privacy in the areas secured by the locks to which the keys seized from him fit and any search of those secured areas had to be made pursuant to a warrant.

As detailed above, the search of appellant was proper; therefore the keys that were seized from him were admissible. The only new issue presented here is whether appellant possessed a reasonable expectation of privacy in the Sentry safe, and in the unlocking of the front door of 558 Chain Street. We found that appellant did not.

After appellant was arrested, he was searched pursuant to that arrest. In part, the search uncovered two sets of keys. One of the keys opened a Sentry safe inside 603 West Main Street, apartment number 2, in which drugs and a firearm were concealed. Another key was later

---

or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." We found that that is what occurred under the facts of this case. 18 Pa.C.S. §5104.

found to open the front door at 558 Chain Street. Appellant did not have an expectation of privacy in 603 West Main Street, apartment 2. Additionally, the Sentry safes would have been opened and the evidence inevitably discovered. Additionally, appellant gave his address as 558 Chain Street.

## CONCLUSION

Based on the forgoing analysis, the March 29, 2010 judgment of sentence should be affirmed.